# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN MICHIGAN

KATHLEEN SQUIERS,

    Plaintiff,

v.

WASHTENAW COUNTY,

    Defendant.

Case No. 2:21-cv-11956

Hon. Sean F. Cox

| Batey Law Firm, PLLC | Miller, Canfield, Paddock & Stone, P.L.C. |
|---|---|
| SCOTT P. BATEY (P54711) | RICHARD W. WARREN (P63123) |
| Attorney for Plaintiff | SCHUYLER FERGUSON |
| 30200 Telegraph Road, Suite 400 | Attorneys for Defendant |
| Bingham Farms, MI  48025 | 150 West Jefferson, Suite 2500 |
| (248) 540-6800-telephone | Detroit, MI  48226 |
| (248) 540-6814-fax | (313) 963-6420-telephone |
| sbatey@bateylaw.com | warren@millercanfield.com |
| | ferguson@millercanfield.com |

## PLAINTIFF'S COUNTER-STATEMENT OF DISPUTED FACTS

### A. Background

1.    Denied as untrue. Plaintiff Kathleen Squiers ("Plaintiff") *was* a Parks Horticulturist in the Washtenaw County ("Defendant") Parks & Recreation Commission until she was effectively terminated. (Exhibit "A", deposition of Kathleen Squiers, pp. 140-41).

2.    Admitted.

3. Denied as incomplete. Plaintiff was the first and only Parks Horticulturist for Defendant from the beginning of her employment in 1998 to the end of her employment in May 2021. (Exhibit "A", deposition of Kathleen Squiers, p. 136). During Plaintiff's time as Parks Horticulturist, Plaintiff and her late husband sold Defendant a conservation easement on their land in 2006 for $350,000. (Exhibit "A", deposition of Kathleen Squiers, pp. 15-18). In 2015, Defendant approached Plaintiff about her donating the rest of her property. Plaintiff declined and Defendant and Plaintiff went into negotiations for the purchase of her property in full. It was not until January 2021, Defendant offered Plaintiff $184,500 for the rest of her property. (Exhibit "A", deposition of Kathleen Squiers, p. 21). Significantly, on May 4, 2021, Plaintiff declined the offer. Shortly after Plaintiff declined Defendant's offer, Plaintiff informed Defendant of her disability.

**B. Plaintiff's Job Duties**

4. Denied as incomplete. List omits examples of other major responsibilities Plaintiff performed. (Exhibit "B", Washtenaw County Job Description). In addition to the listed examples provided in Plaintiff's Job Description, Plaintiff also performed the following:

   a. Planning events, coordinating with volunteers, master gardeners, and community service workers for bigger projects once a week. (Exhibit

2

"A", deposition of Kathleen Squiers, p. 111); (Exhibit "G", deposition of Mary Robinson, p. 9).

    b. Research for the County regarding materials and processes to use for the County such as which type of vehicles, equipment, tools, materials, and supplies should be used. Notating what the Park Horticulturist did everyday and meeting with anyone else involved in projects to make sure crew and materials were ready for projects. (Exhibit "A", deposition of Kathleen Squiers, p. 115).

    c. Acted as a recruiter, trainer, and supervisor for the master gardeners. Plaintiff reported time sheets and set schedules for master gardeners and community service workers. (Exhibit "A", deposition of Kathleen Squiers, p. 112).

    d. Surveyed 14 parks and 30 preserves. (Exhibit "A", deposition of Kathleen Squiers, p. 101).

    e. Plaintiff had an office space where she would work in order to tend to her planning and supervisory tasks. Off-season, Plaintiff spent all day in the office. (Exhibit "I", deposition of Edward Holley, p. 11).

5. Denied as untrue. Plaintiff edged, mulched, cleaned, weeded, pruned, cleaned, watered, planted, and shoveled with the help of Mary Robinson, Plaintiff's Seasonal Horticulturalist, and occasionally Faye Stoner, Park Naturalist. (Exhibit

3

"G", deposition of Mary Robinson, p. 10); (Exhibit "D", deposition of Faye Stoner, p. 9). Plaintiff also had the help of community service members and volunteers with mulching, pruning, weeding, and planting. (Exhibit "I", deposition of Edward Holley, p. 15). The mulch would be delivered to Plaintiff's site in dump trucks and would be moved as close to Plaintiff's working location as possible so Plaintiff could take as much at a time as she was capable of on her own. (Exhibit "D", deposition of Faye Stoner, p. 16). When Plaintiff had to move timbers, which was around once a year, the County maintenance crew helped her. (Exhibit "J", deposition of Edward Wojtan, p. 13).

6. Denied as untrue. Megan Bonfiglio testified she did not recall how often Plaintiff lifted wheelbarrows, mulch, flats of flowers, shrubs, and trees. (Exhibit "L", deposition of Meghan Bonfiglio, pp. 11-12) ("Q: Do you recall how often she was lifting those items you just listed? A: No.").

7. Denied as untrue. Coy Vaughn testified he viewed Plaintiff working from his office window, giving him no hands-on experience or knowledge to state how much something weighed. (Exhibit "M", deposition of Coy Vaughn, p. 12). In addition, Plaintiff and Mary Robinson was the only co-worker of Plaintiff who worked every day alongside Plaintiff in season and outdoors, both testified Plaintiff rarely had to lift in excess of Plaintiff's pounds and that when things were heavy, they received help from coworkers, volunteers, or equipment. (Exhibit "A",

4

deposition of Kathleen Squiers, p. 204); (Exhibit "G", deposition of Mary Robinson, p. 9); (Exhibit "D", deposition of Faye Stoner, pp. 21-22).

8. Admit, but Plaintiff further states the job description contained a section titled, "PHYSICAL DEMANDS," which was blank until Plaintiff requested her reasonable accommodation, at which time Defendant added language to exclude Plaintiff. (Exhibit "B", Washtenaw County Job Description).

9. Denied as untrue. County only added language into the "Physical Demands" portion of Plaintiff's job description immediately following Defendant's denial of Plaintiff's reasonable accommodation. (Exhibit "E", Email to Change Job Description). Meghan Bonfiglio, Deputy Director, along with Ed Holley and Coy Vaughn, notified Michelle Murray that Plaintiff's request should be denied. (Exhibit "F", Accommodation Request Emails). On May 27, 2021 at 5:04 PM Defendant denied her reasonable accommodation request. On May 27, 2021, at 5:29 PM, Meghan Bonfiglio contacted Nina Johnson to change Plaintiff's job description so that lifting was an essential function of the job to exclude Plaintiff from her position and deny her reasonable accommodation which required Plaintiff to avoid lifting over thirty pounds at any one time. (Exhibit "E", Email to Change Job Description).

10. Denied as untrue. Mary Robinson, Seasonal Parks Horticulturist Assistant to Plaintiff, and Faye Stoner, Parks Naturalist both testified to not seeing a written lifting requirement or Defendant verbally telling them about a lifting

5

requirement for their job, let alone a certain amount they were required to lift. (Exhibit "G", deposition of Mary Robinson, p. 12); (Exhibit "D", deposition of Faye Stoner, p. 22).

11. Denied as untrue. In January 2019, as requested, Plaintiff sent a completed survey regarding her job description to her supervisor, Ed Holley. (Exhibit "A", deposition of Kathleen Squiers, p. 177). Plaintiff and Holley attempted to negotiate to try to reclassify Plaintiff's job description. (Exhibit "A", deposition of Kathleen Squiers, p. 178). Plaintiff's focus was on reorganizing the list of tasks to better reflect her job, so they reversed the order of tasks to put the supervisory and planning duties at the top. (Exhibit "A", deposition of Kathleen Squiers, pp. 176-77).

12. Denied as untrue. Plaintiff was discharged before anything was finalized regarding the reworking of the job description. (Exhibit "A", deposition of Kathleen Squiers, p. 177).

13. Denied as untrue. Plaintiff did not finalize that portion of the Physical Demands section and did not intend the ability to lift eighty pounds to be an essential function of the job because she testified that lifting over thirty pounds was "rare" and if it did happen, she had heavy equipment to use or another person available. (Exhibit "A", deposition of Kathleen Squiers, p. 204).

6

### C. The Collective Bargaining Agreement

14. Admitted.

15. Admitted.

16. Plaintiff agrees the County has a Non-Discrimination, but denies County complies with it.

17. Denied as untrue. Article 21 of the CBA states "[t]he County shall abide by all provisions of the Family Medical Leave Act." Plaintiff further states that she did not request FMLA leave or a Leave of Absence.

18. Denied as untrue. Article 21 govern "Application for Illness Leave" and Plaintiff never filled out Application or verbally requested an illness leave.

### D. Plaintiff's FMLA Requests

19. Admitted. For "years" Plaintiff was certified to take intermittent leave when needed for her asthma. The intermittent leave was in place from 2007 through 2020 in case Plaintiff missed or used too much sick time for her asthma without proper notification. (Exhibit "A", deposition of Kathleen Squiers, p. 170). Plaintiff had not needed to use her reserved intermittent leave. (Exhibit "A", deposition of Kathleen Squiers, p. 170).

20. Admitted.

21. Denied as untrue. When asked: "[n]obody from the County ever told you that if you took leave for asthma you would be fired, right?" Plaintiff responded: "not in those words, no." (Exhibit "A", deposition of Kathleen Squiers, pp. 170-71).

22. Denied as untrue. Plaintiff was denied the possibility of using her FMLA intermittent because Defendant exhausted it by refusing to accommodate her.

### E. Plaintiff's ADA Request

23. Admitted.

24. Denied as incomplete. On May 13, 2021, Plaintiff emailed Defendant's Human Resources following her initial diagnosis of an aortic aneurysm. Plaintiff testified that her diagnosis was a scare and eventually her Doctor told her that it was something that could be monitored and not as dangerous as the Doctor initially thought when Plaintiff was first diagnosed. (Exhibit "A", deposition of Kathleen Squiers, p. 95). Plaintiff's email to Chyanne Duncan was articulated off the original medical diagnosis she received from her Doctor and was quickly revised once Plaintiff formally requested accommodations under the ADA. (Exhibit "A", deposition of Kathleen Squiers, p. 95).

### F. The County Did Not Engage in the Interactive Process and Did Not Grant Plaintiff a Reasonable Accommodation.

25. Admitted.

26. Admitted.

27. Admitted.

8

28. Admitted.

29. Admitted.

30. Admitted.

31. Admitted.

32. Admitted.

33. Admitted.

34. Admitted.

35. Admitted. Plaintiff further states that Dr. Saunders also stated that "she is *only* limited in ability to lift *heavy* objects or moderately heavy object repeatedly throughout the day." (Exhibit "N", ADA Medical Inquiry Form).

36. Denied as untrue. Defendant did not conduct a "thorough" review or engage in an interactive process. Defendant did not follow up with Plaintiff or Plaintiff's seasonal worker who worked alongside of Plaintiff regarding the essential functions of Plaintiff's position. (Exhibit "A", deposition of Kathleen Squiers, pp. 204-205); (Exhibit "G", deposition of Mary Robinson, pp. 13-14). Additionally, heavy lifting was not an essential function of Plaintiff's job. During the times Plaintiff was required to lift something heavy, she was capable with or without additional help. (Exhibit "I", deposition of Edward Holley, p. 13). However, those occasions were rare and often there was additional help available whether it be

9

Plaintiff's seasonal helper, additional equipment, or coordinated volunteer help. (Exhibit "A", deposition of Kathleen Squiers, pp. 204-05).

37. Admitted.

38. Denied as untrue. Plaintiff responded to Defendant's denial of her reasonable accommodation with concerns the County violated laws (ADA and PWDCRA):

> My doctor has clearly stated I can continue working within my job description. No one has said why they cannot minimally accommodate some health concerns. It looks as though they just do not want to accommodate my health concerns. Frankly, I believe this is in violation of some laws, and contracts. Kathy Squiers.

(Exhibit "K", Email Chain re Denial of Reasonable Accommodation). Defendant's employee responded: "Unfortunately as your position as a Parks Horticulturalist and many of the duties that this entails over the course of the year, but specifically for a majority of the year (Spring through Fall), these restrictions are not able to be accommodated based on the duties assigned." (Exhibit "E"). However, at the time Plaintiff requested her reasonable accommodation, there were no physical demands written on her job description and she had never been told there was a lifting requirement by the Defendant. (Exhibit "B").

39. Admitted.

40. Admitted.

41. Admitted.

42. Denied as untrue. Plaintiff did not receive a September 16, 2021, Letter. (Exhibit "A", deposition of Kathleen Squiers, p. 196). Additionally, in August 2021, Defendant told Plaintiff to return to the County to retrieve all her personal belonging. (Exhibit "A", deposition of Kathleen Squiers, p. 196).

43. Denied as untrue. Plaintiff submitted a Notice of Intent to retire in order to receive her pension. (Exhibit "A", deposition of Kathleen Squiers, p. 64). ("I was told that I needed to give two weeks notice, written notice with intent to retire and I did that.") (Exhibit "A", deposition of Kathleen Squiers, p. 65); (Exhibit "O", Intent to Retire).

44. Admitted.

45. Denied as untrue. On May 2022, Defendant terminated Plaintiff by refusing to allow her to work, not paying her, and Plaintiff lost her health and medical benefits. (Exhibit "A", deposition of Kathleen Squiers, p. 66). Plaintiff was forced on unpaid medical leave that she did not request nor did she want. (Exhibit "A", deposition of Kathleen Squiers, pp. 72-73). Defendant told Plaintiff she could only return to work if she no longer has a thoracic aortic aneurysm.

46. Denied as untrue. Defendant forced Plaintiff on unpaid leave because she requested a reasonable accommodation and since Plaintiff has lost her health and medical benefits. (Exhibit "A", deposition of Kathleen Squiers, pp. 72-73).

47. Denied. Plaintiff never filed an "Application for Illness Leave" as required by Article 21 of the CBA. Defendant discharged Plaintiff by denying her request for a reasonable accommodation, placing her on unpaid leave, informing her to retrieve her personal belongings, and terminating her benefits. Plaintiff was discharged, not accommodated.

48. Denied as untrue. Plaintiff has been able to perform the essential function of her job. Defendant discharged Plaintiff when it forced her on unpaid medical leave, did not allow her to return to work, and took away her benefits. (Exhibit "A", deposition of Kathleen Squiers, p. 69).

49. Denied as untrue. Defendant denied Plaintiff the ability to use her intermittent leave for her asthma once she was placed on unrequested medical leave, because FMLA leave runs concurrently and Defendant exhausted Plaintiff's FMLA leave. (Exhibit "A", deposition of Kathleen Squiers, p. 163).

50. Denied as untrue. Plaintiff is disabled and can perform the essential function of her job. (Exhibit "A", deposition of Kathleen Squiers, p. 183).

51. Denied. On September 16, 2021, Plaintiff submitted Notice to Retire to receive her Pension. (Exhibit "O"). Plaintiff never received her Pension. (Exhibit "A", deposition of Kathleen Squiers, p. 33).

**G. Plaintiff Stipulated to Dismiss Sex Discrimination Allegations**

52. Admitted.

53. Admitted.

54. Admitted.

55. Admitted.

56. Admitted.

57. Admitted.

58. Admitted.

59. Admitted.

60. Admitted.

**H. Plaintiff's Lawsuit and EEOC Charge**

61. Admitted.

62. Admitted.

63. Admitted.

64. Admitted.

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS A GENUINE ISSUE OF MATERIAL FACT FOR TRIAL**

1. Whether Defendant was already providing the requested accommodations before Plaintiff went on sick leave and only denied the accommodations when her doctor requested her to work with the accommodations. (Exhibit "A", deposition of Kathleen Squiers, p. 93).

2. Whether lifting was an essential function of Plaintiff's position as Parks Horticulturist. (Exhibit "A", deposition of Kathleen Squiers, p. 204).

13

3. Whether lifting over thirty pounds was an essential function of Plaintiff's position as Parks Horticulturist. (Exhibit "A", deposition of Kathleen Squiers, p. 94).

4. Whether Plaintiff's requested accommodation was reasonable. (Exhibit "A", deposition of Kathleen Squiers, p. 203).

5. Whether Defendant changed Plaintiff's Job Description immediately after it denied Plaintiff's request for a reasonable accommodation to exclude her from continuing to work with her disability. (Exhibit "E", Email to Change Job Description).

6. Whether forced, unpaid medical leave was a reasonable accommodation. (Exhibit "A", deposition of Kathleen Squiers, p. 72).

7. Whether Plaintiff was terminated from her position as Parks Horticulturist. (Exhibit "A", deposition of Kathleen Squiers, p. 72).

Respectfully submitted,

**BATEY LAW FIRM, PLLC**

By: /s/ Scott P. Batey
SCOTT P. BATEY (P54711)
Attorney for Plaintiff
30200 Telegraph Road, Suite 400
Bingham Farms, Michigan 48025
(248) 540-6800
sbatey@bateylaw.com

Dated: February 6, 2023

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 6, 2023, I electronically filed Plaintiff's Counter-Statement of Disputed Facts with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys on record.

                                          /s/Roslyn Cockrell
                                          Roslyn Cockrell
                                          Paralegal to Attorney Scott P. Batey